**In the Matter of William R. McCAIN.**

**No. 280S47.**

Supreme Court of Indiana.

Sept. 18, 1981.

William R. McCain, pro se.

Sheldon A. Breskow, Executive Secretary, Indiana Supreme Court Disciplinary Commission, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

This proceeding is before the Court on a Six Count Verified Complaint filed by this Court's Disciplinary Commission pursuant to Admission and Discipline Rule 23, Section 12. As provided for under Rule 23, a Hearing Officer was appointed, a hearing was held, and the Hearing Officer has filed with this Court the requisite report. Neither party has petitioned for review.

There being no objection to the Hearing Officer's report, this Court now adopts as its own the findings of fact of the Hearing Officer. Accordingly, we now find under Count I of the Verified Complaint that Respondent was employed by a client to seek specific performance of a real estate sales contract. Respondent's client had agreed to purchase property for the sum of $20,-000.00; he had paid a third party $9,000.00 and was prepared to pay the remaining $11,000.00. Respondent advised his client that the sales contract called for biannual payments of interest on the unpaid balance and that the client should make payments to be held in the Respondent's trust account and disbursed pursuant to the Court's order. In accordance with his advice, the client delivered to Respondent his personal check for $440.00, representing one biannual interest payment. On November 28, 1978, Respondent deposited this sum in his personal checking account. Respondent thereafter refused to communicate with this client and in spite of repeated demands by his client and a newly acquired attorney, Respondent never returned the $440.00 paid to him as a biannual interest payment.

Accordingly, this Court now finds under Count I that the Respondent has failed to carry out a contract for legal employment. By refusing to communicate with his client and by failing to proceed with his client's claim for specific performance, the Respondent neglected a legal matter entrusted to his care. The Respondent commingled his client's funds with his own, converted same to his personal use, and repeatedly misrepresented this fact to the client. This conduct in his capacity as an attorney violated: Disciplinary Rule 1–102(A)(1), (3) and (4); Disciplinary Rule 6–101(A)(3); Disciplinary Rule 7–101(A)(2); Disciplinary Rule 9–102(A) and Disciplinary Rule 9–102(B)(3) and (4), of the *Code of Professional Responsibility for Attorneys at Law*, Court Rules, Book 2, Ind.Ann.Stat. (1973); and the *Oath of Attorneys* for members of the Indiana Bar.

Under Count II of the Verified Complaint we now find that Respondent was employed to represent a male client in a dissolution proceeding in the Morgan Circuit Court. This client agreed to pay Respondent's fee and the fee of his wife's counsel. The client further agreed that should the action be dismissed by the parties, he would pay one-half of each attorney's fee. Respondent was first advised that reconciliation was not possible, however, two days later on June 10, 1979, the parties reconciled and this time requested dismissal of the pending dissolution proceeding. Respondent did not seek dismissal of the action. He failed to have a previously scheduled hearing on the Petition for Dissolution removed from the Court's calendar. As a result, on July 19, 1979, wife's counsel and Respondent appeared in Court for a hearing, however, neither the client nor his wife appeared. Upon demand, Respondent then paid wife's counsel one-half of his fee as previously agreed and returned $350.00 of a pre-paid amount to his client as fee reimbursement. The reimbursement check was written on Respondent's personal account and was eventually returned dishonored for having insufficient funds. Respondent intentionally delivered his check knowing that it would not be paid by his depository. On November 6, 1979, by reason of this conduct, Respondent was charged with the criminal offense of check deception. On November 18, 1980, the Respondent was found guilty after a jury trial of this offense.

In view of our findings under Count II, we accordingly find that by failing to dismiss the dissolution action pursuant to his client's instructions Respondent failed to carry out a contract of employment and neglected a legal matter entrusted to his care. By accepting money to be delivered to a third party and commingling it with his own funds, the Respondent failed to properly preserve the identity of those funds. By writing and delivering a check knowing it would not be paid by the depository, the Respondent has engaged in criminal conduct involving moral turpitude and violating I.C. 35–43–5–5, and thus, participated in conduct involving dishonesty, fraud and deceit. Such conduct in his capacity as an attorney violated: Disciplinary Rule 1–

102(A)(1), (3) and (4); Disciplinary Rule 6–101(A)(3); Disciplinary Rule 7–101(A)(1), (2) and (3); Disciplinary Rule 9–102(A) and Disciplinary Rule 9–102(B)(2), (3) and (4) of the *Code of Professional Responsibility for Attorneys at Law* and the *Oath of Attorneys* for members of the Indiana Bar.

Under Count III of the Verified Complaint this Court finds that on August 20, 1979, Respondent was retained to represent a client on the criminal charge of operating a motor vehicle while intoxicated and driving without a license, the subject of which was an automobile accident involving property damage. This client plead guilty and as part of the sentence imposed was ordered to make restitution within ten days to the victim of the accident. On the date of the imposition of sentence this client gave Respondent $200.00 which represented the restitution ordered by the Court. Thereafter, the Respondent advised the victim's spouse that the Respondent did not have the $200.00 and to contact him at a later date. After repeated demands Respondent delivered to the victim the $200.00 on September 14, 1979. This was twenty-four days after the Respondent had received the sum of $200.00 from his client and fourteen days after the date ordered for payment by the Court.

In view of our findings under Count III, this Court now further finds that by failing to forward restitution funds as requested by his client, Respondent neglected a legal matter entrusted to his care. By commingling said funds with his personal funds he failed to properly preserve their identity. By denying possession of said funds he misrepresented facts and acted in a fraudulent manner. The Respondent's conduct in his capacity as an attorney violated: Disciplinary Rule 1–102(A)(1) and (4); Disciplinary Rule 6–101(A)(3); Disciplinary Rule 7–101(A)(2) and (3) of the *Code of Professional Responsibility for Attorneys at Law* and the *Oath of Attorneys* for members of the Indiana Bar.

Under Count IV of the Verified Complaint we now find that Respondent was retained to pursue an action contesting the probate of a will and at his request received a retainer fee of $250.00. The Respondent was retained on December 28, 1978. On June 6, 1979, Respondent requested and received an additional $75.00 from his client for the averred purpose of taking a deposition incidental to the will contest. No deposition was taken. Respondent refused to communicate with his client; and he refused to return his client's file. These acts prevented his client and newly retained counsel from adequately preparing for the pending litigation.

In view of this Court's findings under Count IV of the Verified Complaint, we now find that Respondent's failure to advance his client's cause and refusing access to the files, and his refusal to contact his client is neglect of a legal matter entrusted to him, a failure to carry out the objectives of his client, and damages his client's interest. By indicating the need for deposition costs, when no deposition had been taken, the Respondent misrepresented facts and engaged in deceitful conduct. Such conduct in his capacity as an attorney violated: Disciplinary Rule 1–102(A)(1) and (4); Disciplinary Rule 6–101(A)(3); and Disciplinary Rule 7–101(A)(1), (2) and (3) of the *Code of Professional Responsibility for Attorneys at Law*; and the *Oath of Attorneys* for the members of the Bar of Indiana.

Under Count V of the Verified Complaint filed in this cause, this Court now finds that Respondent was retained on December 5, 1977 to represent a male client in a paternity action filed in Monroe County Juvenile Court. Respondent was paid $500.00 as a fee in this matter. Respondent consistently failed to communicate with his client who, in an attempt to learn about the upcoming trial of this action, found Respondent in a Martinsville tavern. This was the day before the scheduled hearing. Respondent returned to his office that night with a "six-pack" of beer and advised his client that he was going to "prepare" for the trial. The hearing was held on August 8, 1979, and the Court took the matter under advisement, ultimately finding against Respondent's client. Respondent never informed his

client of the Court's findings and the resulting support order. Consequently, this client was cited for the failure to pay support and brought before the Court to show cause why he should not be held in contempt. It was at this time that Respondent's client learned of the Court's findings. Without his client's knowledge or permission, Respondent filed a Motion to Correct Errors, praeciped for a transcript, filed a Notice of Appeal, and had an appeal bond set. Respondent then did nothing to perfect any appeal nor pay for the transcript which was ordered.

In view of this court's findings under Count V of the Verified Complaint we now further find that the Respondent, by not adequately preparing for the paternity hearing and refusing to communicate with his client, neglected a legal matter, and failed to act competently. By not informing his client of the results of the paternity action and incurring expenses without his knowledge or consent, the Respondent prejudiced and damaged his client and the administration of justice. Such conduct in his capacity as an attorney violated: Disciplinary Rule 1–102(A)(1)(5) and (6); Disciplinary Rule 6–101(A)(2) and (3); and Disciplinary Rule 7–101(A)(1)(2) and (3) of the *Code of Professional Responsibility for Attorneys at Law* and the *Oath of Attorneys* for the members of the Bar of Indiana.

Lastly, under Count VI of the Verified Complaint we now find that in November, 1977, Respondent approached an individual in a restaurant in Martinsville for the purpose of discovering the whereabouts of the guardian of a young child whose mother was killed in an automobile accident. Respondent wanted to solicit the guardian as a client in an action for wrongful death and injuries arising out of the accident. Thereafter, the Respondent telephoned the guardian and stated that the child's father's attorney had turned over the litigation file to the Respondent. This statement was not true. On March 10, 1978, the guardian and her husband met Respondent in Indianapolis and were asked to endorse a check payable to the Respondent and the guardians in the amount of $2,500.00. This check repre-

sented a negotiated settlement with Farm Bureau Mutual Insurance Company for the injuries sustained by the child in the accident. The clients were advised that $300.00 would be paid to the attorney who allegedly turned over the file, $300.00 would be retained by the Respondent for fees and the balance would be used to pursue a wrongful death claim for the child's mother's estate. Respondent further advised the guardian that she would be appointed as the Administratrix of the estate. However, Respondent had his secretary appointed as the Executrix. After learning of Respondent's misrepresentations, the guardian contacted another counsel, demanded Respondent's withdrawal as attorney in the wrongful death action, and further demanded delivery of all funds belonging to the child. After repeated demands, Respondent delivered to the guardian a personal check in the amount of $1,536.67. When cashed, the check was returned by reason of insufficient funds.

In view of this Court's findings under Count VI of the Verified Complaint we now find that the Respondent, by soliciting business relative to his representation of the minor child and his prosecution of her mother's wrongful death action, recommended his employment to a non-lawyer who had not sought his advice regarding employment as a lawyer. By advising the clients that an attorney had referred them to him, and by telling the guardian that she would be the administratrix in the wrongful death action, when such was not the case, the Respondent engaged in conduct involving misrepresentation, fraud and deceit. By commingling his client's funds with his own, the Respondent failed to promptly return his client's funds when so requested, and ultimately converted them to his own use. Such conduct in his capacity as an attorney violated: Disciplinary Rule 1–102(A)(1), (3) and (4); Disciplinary Rule 2–103(A); Disciplinary Rule 9–102(A); and Disciplinary Rule 9–102(B)(4) of the *Code of Professional Responsibility for Attorneys at Law* and the *Oath of Attorneys* for the members of the Indiana Bar.

This Court, having found misconduct as charged under all counts of the Verified Complaint filed in this cause, must now determine an appropriate sanction. It is without question that Respondent engaged in a course of conduct totally devoid of any professional standard. Respondent misrepresented matters to his clients, misused client's funds, neglected professional obligations, and engaged in illegal conduct. Professionalism was totally abandoned and the purpose of representation was lost amid the obscure self-interests of the Respondent.

This Court has repeatedly noted that the fuduciary relationship between attorney and client is based in trust. A lawyer cannot effectively represent any individual unless that person is willing to place his or her trust in the professional judgment offered. As a profession, the Bar of this state must continuously strive to build and safeguard the faith and trust historically and necessarily placed in the legal profession by all the members of our society. Acts, such as present in this case, seriously weaken the efforts of the overwhelming majority of attorneys who throughout a generation of legal service have met and exceeded expected standards of professional ethics. This Court must echo the total abhorrence to the conduct in this case felt by the hard-working majority of attorneys striving to improve the legal profession.

Under the Constitution of the State of Indiana, this Court is given the responsibility of safeguarding the integrity of the legal profession. We intend to do so. Accordingly, this Court now concludes that, by reason of the serious nature of the misconduct found in this case and in order to preserve the integrity of the profession, the strongest sanction available must be imposed. It is therefore ordered that the Respondent be, and he hereby is, disbarred as an attorney in the State of Indiana.

Costs are assessed against the Respondent.